**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| IN RE: | BANKRUPTCY NO. 10-52318-tnw |
| STONE*WALL FARM STALLIONS I, LLC, et al. | CHAPTER 11 |
| DEBTOR IN POSSESSION | JOINTLY ADMINISTERED |

**EMERGENCY MOTION OF JPMORGAN CHASE BANK, N.A.
TO PROHIBIT DEBTORS' USE OF CASH COLLATERAL
AND TO REQUIRE SEGREGATION OF PROCEEDS**

JPMorgan Chase Bank, N.A. ("Chase"), by and through undersigned counsel respectfully requests that this Court enter an Order pursuant to 11 U.S.C. § 363(e) prohibiting use of Chase's collateral in these Chapter 11 cases, and directing the Debtors to deposit all proceeds of Chase's collateral into a segregated account. In support of this motion, Chase respectfully states, alleges and submits as follows:

1. This Motion relates to the following cases:

   Stone*Wall Farm Stallions I, LLC (Case #1 0-52318-tnw);
   Stone*Wall Farm Stallions VII, LLC (Case #10-52319-tnw);
   Stone*Wall Farm Stallions Racing Division I, LLC (Case #10-52317-tnw);
   Hotcopri, LLC (Case #1 0-52315-tnw); and
   Malandrin, LLC (Case #1 0-52316-tnw)

2. This Motion is brought pursuant to Bankruptcy Rule 4001 and in conformity with Rule 9014.

3. On July 20, 2010 ("Petition Date"), Debtors, Stone*Wall Farm Stallions I, LLC ("Stone*Wall I") (Case No. 10-52318), Stone*Wall Farm Stallions VII, LLC ("Stone*Wall VII") (Case No. 10-52319), Stone*Wall Farm Stallions Racing Division I, LLC ("Stone*Wall Racing") (Case No. 10-52317), Hotcopri, LLC ("HotCoPri") (Case No. 10-52315), and Malandrin, LLC ("Malandrin") (Case No. 10-52316) filed petitions for relief under Chapter 11 of

CQ42:40501:358483:1:LEXINGTON

the Bankruptcy Code.  (Collectively, Stone*Wall I, Stone*Wall VII, Stone*Wall Racing, HotCoPri and Malandrin are referred to herein as the "Debtors").

4. On July 20, 2010, Stone*Wall I filed a motion seeking to consolidate the Debtors' bankruptcy cases for administrative purposes under Stone*Wall Farm Stallions I, LLC, Case No. 10-52318 (the "Motion to Consolidate") which motion was granted.  [Doc. No. 6].

5. On or about January 31, 2008, Stone*Wall I and Stone*Wall VII, along with Nevertell Farm Kentucky II, LLC ("Nevertell II") (collectively, the "Stallion Loan Borrowers"), for value received, executed and delivered to Chase a Second Amended and Restated Promissory Note (as amended, the "Stallion Loan Note"), in the original principal amount of Twelve Million Four Hundred Thousand Dollars ($12,400,000).  A copy of the Stallion Loan Note is attached hereto as Exhibit A.

6. To secure repayment of the Stallion Loan Note and all modifications, extensions and renewals thereof, the Stallion Loan Borrowers granted Chase a security interest in and to the Thoroughbred stallions LEROIDESANIMAUX by CANDY STRIPES out of DISSEMBLE and A.P. WARRIOR by A.P. INDY out of WARRIOR QUEEN and all stallion shares, breeding rights, evidences of ownership, policies of insurance and all proceeds thereof pursuant to an Amended and Restated Loan and Security Agreement dated March 9, 2007 (as amended, the "Stallion Loan Security Agreement").  The Stallion Loan Security Agreement is attached hereto as Exhibit B.  (Collectively all collateral secured by the Stallion Loan Security Agreement is referred to herein as the "Stallion Loan Collateral").

7. Chase is the owner and holder of the Stallion Loan Note.

8. The principal amount of the Stallion Loan Note and all sums due under the Stallion Loan Note, bear interest at a floating rate of the CB Floating Rate of Chase plus 3.5%

per annum (representing the rate of CB Floating Rate plus 1.5% plus an additional 2% default rate) (the "Stallion Loan Note Rate").

9. By virtue of the Stallion Loan Note and the Stallion Loan Security Agreement, and to secure the indebtedness and obligations owing to Chase under the Stallion Loan Note, Chase has a lien and security interest on the Stallion Loan Collateral, which lien and security interest is first, prior and superior to any and all other liens thereon.

10. Pursuant to the Stallion Loan Note and the Stallion Loan Security Agreement, all amounts due for principal, interest and late charges or other payments of any kind made by Chase are further secured by Chase's lien on the Stallion Loan Collateral described in Exhibit C.

11. The Stallion Loan Borrowers have defaulted on their obligations to Chase under the Stallion Loan Note and the Stallion Loan Security Agreement by failing to make required and timely payments of principal and accrued interest and failing to meet other covenants applicable under such agreements, despite being given opportunity to cure. Based on such defaults, in accordance with the terms of the Stallion Loan Note and the Stallion Loan Security Agreement, the entire indebtedness under the Stallion Loan Note has been accelerated and Chase hereby declares such indebtedness immediately due and payable.

12. As of July 6, 2010, there is due and owing to Chase under the Stallion Loan Note a total amount of $3,492,753.09, which consists of the principal sum of $3,430,363.36, plus interest in the amount of $62,389.73, plus additional interest at $643.19 per diem thereafter until paid in full, along with all late charges, attorney's fees and costs.

13. On or about September 28, 2007, Stone*Wall Racing, for value received, executed and delivered to Chase a Promissory Note (the "LAWYER RON Note "), in the

original principal amount of Three Million Four Hundred Thousand Dollars ($3,400,000). A copy of the LAWYER RON Note is attached hereto as <u>Exhibit D</u>.

14. To secure repayment of the LAWYER RON Note and all modifications, extensions and renewals thereof, Stone*Wall Racing granted Chase a security interest in and to all of Stone*Wall Racing's interest in and to a thirty five percent (35%) interest in Hines Racing, LLC, which is the sole owner of the Thoroughbred stallion LAWYER RON and/or LAWYER RON and all stallion shares, breeding rights, evidences of ownership, policies of insurance and all proceeds thereof pursuant to a Loan and Security Agreement dated September 28, 2007 (the "LAWYER RON Security Agreement"). The LAWYER RON Security Agreement is attached hereto as <u>Exhibit E</u>. (Collectively all collateral secured by the LAWYER RON Security Agreement is referred to herein as the "LAWYER RON Loan Collateral").

15. Chase is the owner and holder of the LAWYER RON Note.

16. The principal amount of the LAWYER RON Note and all sums due under the LAWYER RON Note, bear interest at a floating rate of the CB Floating Rate of Chase plus 3.5% per annum (representing the rate of the CB Floating Rate of Chase plus 1.5% plus an additional 2% default rate) (the "LAWYER RON Note Rate").

17. By virtue of the LAWYER RON Note and the LAWYER RON Security Agreement, and to secure the indebtedness and obligations owing to Chase under the LAWYER RON Note, Chase has a lien and security interest on the LAWYER RON Loan Collateral, which lien and security interest is first, prior and superior to any and all other liens thereon.

18. Pursuant to the LAWYER RON Note and the LAWYER RON Security Agreement, all amounts due for principal, interest and late charges or other payments of any

kind made by Chase are further secured by Chase's lien on the LAWYER RON Loan Collateral described in Exhibit F.

19. Under the Guaranty executed and delivered on September 28, 2007, Stone*Wall II, Stone*Wall VII and Nevertell II, jointly and severally, guaranteed any and all amounts due and owing Chase by Stone*Wall Racing, including, but not limited to, those under the LAWYER RON Note in an aggregate amount, not to exceed, $3,400,000 plus any expenses, reimbursements or other costs or fees due Chase under the LAWYER RON Security Agreement (the "LAWYER RON Corporate Guaranty"). A copy of the LAWYER RON Stone*Wall II Guaranty is attached hereto as Exhibit G.

20. Stone*Wall Racing has defaulted on its obligations to Chase under the LAWYER RON Note and the LAWYER RON Security Agreement by failing to make required and timely payments of principal and accrued interest and failing to meet other covenants applicable under such agreements, despite being given opportunity to cure. Based on such defaults, in accordance with the terms of the LAWYER RON Note and the LAWYER RON Security Agreement, the entire indebtedness under the LAWYER RON Note has been accelerated and Chase hereby declares such indebtedness immediately due and payable.

21. As of July 6, 2010, there is due and owing to Chase under the LAWYER RON Note a total amount of $51,417.26, which consists of the principal sum of $50,172.12, plus interest in the amount of $1,245.14, plus additional interest at $9.41 per diem thereafter until paid in full, along with all late charges, attorney's fees and costs.

22. On or about January 31, 2008, Nevertell II, for value received, executed and delivered to Chase an Amended and Restated Revolving Line of Credit Note (as amended, the "Nevertell II Note " and together with the Stallion Loan Note and the LAWYER RON Note, the

"Notes"), in the original principal amount of Four Million Five Hundred Thousand Dollars ($4,500,000). A copy of the Nevertell II Note is attached hereto as Exhibit H.

23. To secure repayment of the Nevertell II Note and all modifications, extensions and renewals thereof, Nevertell II granted Chase a security interest in and to certain property of Nevertell II pursuant to an Amended and Restated Loan and Security Agreement dated January 31, 2008 (as amended, the "Nevertell II Security Agreement"). The Nevertell II Security Agreement is attached hereto as Exhibit I. (Collectively all collateral secured by the Nevertell II Security Agreement is referred to herein as the "Nevertell II Loan Collateral").

24. Chase is the owner and holder of the Nevertell II Note.

25. The principal amount of the Nevertell II Note and all sums due under the Nevertell II Note, bear interest at a floating rate of the CB Floating Rate of Chase plus 1.5% per annum (representing the rate of the CB Floating Rate of Chase plus 1.5% plus an additional 2% default rate) (the "Nevertell II Note Rate").

26. By virtue of the Nevertell II Note and the Nevertell II Security Agreement, and to secure the indebtedness and obligations owing to Chase under the Nevertell II Note, Chase has a lien and security interest on the Nevertell II Loan Collateral, which lien and security interest is first, prior and superior to any and all other liens thereon.

27. Pursuant to the Nevertell II Note and the Nevertell II Security Agreement, all amounts due for principal, interest and late charges or other payments of any kind made by Chase are further secured by Chase's lien on the Nevertell II Loan Collateral described in Exhibit J.

28. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall I guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to exceed, $4,500,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall I First Guaranty").  A copy of the Nevertell II Stone*Wall I First Guaranty is attached hereto as Exhibit K.

29. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall I guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to exceed, 2,909,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall I Second Guaranty").  A copy of the Nevertell II Stone*Wall I Second Guaranty is attached hereto as Exhibit L.

30. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall VII guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to exceed, $4,500,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall VII First Guaranty").  A copy of the Nevertell II Stone*Wall VII First Guaranty is attached hereto as Exhibit M.

31. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall VII guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to

exceed, $2,909,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall VII Second Guaranty"). A copy of the Nevertell II Stone*Wall VII Second Guaranty is attached hereto as Exhibit N.

32. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall Racing guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to exceed, $4,500,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall Racing First Guaranty"). A copy of the Nevertell II Stone*Wall Racing First Guaranty is attached hereto as Exhibit O.

33. Under the Amended and Restated Guaranty executed and delivered on January 31, 2008, Stone*Wall Racing guaranteed any and all amounts due and owing Chase by Nevertell II, including, but not limited to, those under the Nevertell II Note in an aggregate amount, not to exceed, $2,909,000 plus any expenses, reimbursements or other costs or fees due Chase under the Nevertell II Security Agreement (as amended, the "Nevertell II Stone*Wall Racing Second Guaranty"). A copy of the Nevertell II Stone*Wall Racing Second Guaranty is attached hereto as Exhibit P.

34. On or about January 30, 2009, Stone*Wall Farm Kentucky, LLC ("Stone*Wall Kentucky"), Stone*Wall I, Stone*Wall Farm Stallion II, LLC, Stone*Wall VII, Stone*Wall Racing, Nevertell Farm, LLC, Malandrin, HotCoPri and Nevertell Farm Kentucky III, LLC, for value received, executed and delivered to Chase a Second Amendment of Forbearance

-8-

Agreement (as amended, the "Forbearance Agreement "). A copy of the Forbearance Agreement is attached hereto as Exhibit Q.

35. Pursuant to the Forbearance Agreement, Chase and Nevertell II acknowledged that, due to the mutual misunderstanding of the parties, the obligations of Nevertell II under the loan documents involving Nevertell II set forth above were actually the obligations of Stone*Wall Kentucky and such loan documents were amended to identify Stone*Wall Kentucky as primary debtor and obligor of the repayment (and other) obligations thereunder (the "Stone*Wall Kentucky Obligations").

36. Under the Guaranty executed and delivered on January 30, 2009, Malandrin guaranteed any and all amounts due and owing Chase by Stone*Wall Kentucky, including, but not limited to, those under the Notes in an aggregate amount, not to exceed the principal amount of the Notes, and any and all interest that accrues thereon and expenses (including attorney fees) or other costs or fees due to Chase under the Notes (the "Malandrin Guaranty"). A copy of the Malandrin Guaranty is attached hereto as Exhibit R.

37. To secure the Malandrin Guaranty, Malandrin granted Chase a security interest in and to all of Malandrin's interest in and to a 50% interest in the Thoroughbred stallion share A.P. INDY #7 and all seasons, evidences of ownership, policies of insurance and all proceeds thereof pursuant to a Security Agreement dated January 30, 2009 (the "Malandrin Security Agreement"). The Malandrin Security Agreement is attached hereto as Exhibit S. (Collectively all collateral secured by the Malandrin Security Agreement is referred to herein as the "Malandrin Collateral").

38. Under the Guaranty executed and delivered on January 30, 2009, HotCoPri guaranteed any and all amounts due and owing Chase by Stone*Wall Kentucky, including, but

not limited to, those under the Notes in an aggregate amount, not to exceed the principal amount of the Notes, and any and all interest that accrues thereon and expenses (including attorney fees) or other costs or fees due to Chase under the Notes (the "HotCoPri Guaranty"). A copy of the HotCoPri Guaranty is attached hereto as Exhibit T.

39. To secure the HotCoPri Guaranty, HotCoPri granted Chase a security interest in and to all of HotCoPri's interest in and to the Thoroughbred stallion shares: INDIAN CHARLIE #18; MUTAKKDIM #20; MUTAKKDIM #21; SEEKING THE GOLD #15; THEATRICAL #17. and all seasons, evidences of ownership, policies of insurance and all proceeds thereof pursuant to a Security Agreement dated January 30, 2009 (the "HotCoPri Security Agreement"). The HotCoPri Security Agreement is attached hereto as Exhibit U. (Collectively all collateral secured by the HotCoPri Security Agreement is referred to herein as the "HotCoPri Collateral").

40. Nevertell II and Stone*Wall Kentucky have defaulted on their obligations to Chase under the Nevertell II Note and the Nevertell II Security Agreement by failing to make required and timely payments of principal and accrued interest and failing to meet other covenants applicable under such agreements, despite being given opportunity to cure. Based on such defaults, in accordance with the terms of the Nevertell II Note and the Nevertell II Security Agreement, the entire indebtedness under the Nevertell II Note has been accelerated and Chase hereby declares such indebtedness immediately due and payable.

41. As of July 6, 2010, there is due and owing to Chase under the Nevertell II Note a total amount of $3,538,012.20, which consists of the principal sum of $3,487,404.35, plus interest in the amount of $50,607.85, plus additional interest at $653.89 per diem thereafter until paid in full, along with all late charges, attorney's fees and costs.

42.     Debtors' Budget for Two Stallions and Cash Collateral filed July 27, 2010 [Doc. No. 28] (the "Budget") fails to comply with 11 U.S.C. §365(e).  The Budget provides no adequate protection to Chase.  Chase does not believe such adequate protection can be provided.  Moreover, it proposes use of income from Malandrin and HotCoPri to fund expenses of Stone*Wall I.  Chase specifically objects to such use.  The Debtors' cases have been administratively consolidated but have not been substantively consolidated and funds for each should therefore be segregated and accounted for separately.

43.     Debtors have not filed any motions seeking authorization for the use of cash collateral, and have not provided the cash collateral proceeds to Chase.

44.     Upon information and belief, the Debtors have, since the Petition date, continued to use the proceeds from the Collateral which are subject to Chase's security interest (the "Funds").

45.     Pursuant to 11 U.S.C. § 363(c)(2), the Debtors are not permitted to use the Funds without the consent of Chase or an order of the Court authorizing the use of the Funds which constitute cash collateral.

WHEREFORE, Chase respectfully requests an Order, pursuant to 11 U.S.C. § 363(e), directing the Debtors to cease all use of the Funds and directing the Debtors to immediately, upon receipt, deposit all funds into a separate and segregated account in order to provide adequate protection of Chase's interest in the Collateral and the cash collateral relating thereto.

## NOTICE

Please take notice that this matter will be scheduled by separate order of the Court.

CQ42:40501:358483:1:LEXINGTON

Respectfully submitted this 30th day of July, 2010.

>  */s/ Elizabeth Lee Thompson*
> Elizabeth Lee Thompson
> Valorie D. Smith
> STITES & HARBISON, PLLC
> 250 W. Main Street, Suite 2300
> Lexington, KY 40507-1758
> Telephone: (859) 226-2300
>
> Brian H. Meldrum
> STITES & HARBISON, PLLC
> 400 W. Market Street, Suite 2800
> Louisville, KY 40207
>
> COUNSEL FOR MOVANT, JPMORGAN CHASE BANK, N.A.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motion was served the 30th day of July, 2010, electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in the case, by electronic mail and/or first class mail.

> /s/*Elizabeth Lee Thompson*
> Elizabeth Lee Thompson

Copies to:

Debtor
U.S. Trustee
All attorneys of record
Twenty largest unsecured creditors

CQ42:40501:358483:1:LEXINGTON